503 P.2d 408

James B. ARNOLD, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Talley Industries, Inc., Respondent Employer and Carrier.

No. 1 CA–IC 714.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 28, 1972.

Spencer K. Johnston, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Murphy, Posner & Franks by John R. Franks, Phoenix, for respondent employer and carrier.

DONOFRIO, Judge.

This case is before the Court on a writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona finding no permanent physical or mental disability as a result of petitioner's industrial accident. The question before the Court is whether the award is reasonably supported by the evidence.

Petitioner suffered an injury to his low back on May 7, 1969 while lifting a crate. The diagnosis in the physician's initial report was "spasm, lumbar muscles". Thereafter he received treatment from several doctors and an orthopedic specialist, Dr. Kenneth L. Huffman. On March 11, 1970 Dr. Huffman discharged petitioner with a 5% general disability as a result of the accident. · Respondent carrier then arranged to have petitioner examined by Dr. W. A. Bishop, Jr. in accordance with A.R.S. § 23–1026. Dr. Bishop made his examination and from the history and his examination he reported that petitioner:

" . . . has no evidence to indicate that there is any residual of objective evidence of any disability resulting from the injury as described. He does have a poor posture and it is not unusual with patients with a posture of this type to have aching and painful back of a type that he has.

"CONCLUSION: It is my opinion that the condition is now stationary. No further examinations or treatments are indicated and that he has recovered from any objective evidences of his injury.

"He was reinstructed in William's type exercises which he had not taken since being discharged by Dr. Huffman and he was urged to pursue an exercise program if he wished to become symptom free. This should not be considered as an Industrial responsibility."

Based on Dr. Bishop's report, respondent carrier issued a notice of claim status discharging petitioner with no residual permanent disability and terminating benefits as of March 11, 1970. Petitioner filed a petition for hearing, and formal hearings were held before the hearing officer at which the testimony of Drs. Bishop and Huffman was taken. Each of the doctors testified to the same conclusion he previously held. Petitioner also testified and stated that he had had a football injury while in high school and for which he was hospitalized; that this injury bothered him only for a short while; and that he had not had any trouble with it from that time up until the present industrial accident. He testified that he has had pain since the accident; that usually it was just a discomfort, but that when he did heavy lifting or bending his back got pretty sore and that this affected his looking for work. The Commission, affirming the hearing officer's decision of no disability, resolved the alleged medical conflict against petitioner.

It is petitioner's contention that in reality there is no medical conflict and that an analysis of the medical evidence would reveal a present disability based on disabling pain, citing in support thereof the Supreme Court case of Midland-Ross Corporation v. Industrial Commission, 107 Ariz. 311, 486 P.2d 793 (1971). We are unable to agree.

█ We believe the record supports the contention of respondents that this case involves the initial determination as to whether or not petitioner has sustained a permanent physical or mental disability as a result of the industrial incident which was described as a spasm of the lumbar muscles while lifting a crate. Concededly, petitioner's condition is stationary. Both orthopedic specialists, Drs. Bishop and Huffman, examined petitioner, made reports, and testified at the hearings. We deem it unnecessary to review their testimony except to say that Dr. Bishop concluded that petitioner had no physical

functional or general disability or residuals attributable to the industrial incident, and that Dr. Huffman, on the other hand, concluded that petitioner had a 5% general disability. We need to quote only Dr. Bishop's final testimony:

"Q Are you aware of the fact that Dr. Huffman in a final report when he discharged the patient related that he had a five percent general functional disability?

"A Yes, sir, I was aware of that.

"Q I take it your report disagrees with that, does it not?

"A Yes, sir.

"Q Did you find in any manner as a result of your examination of this patient any residual or permanent partial disability that you would have or do attribute to his accident or injury in May of 1969?

"A No, sir, his low back examination was entirely normal when I saw him, and there was no evidence of any residual from any injury he might have received. He did have a deformity by X ray, which was of a postural type. .

"Q Did you in any way relate that postural deformity to this injury by accident?

"A It is most likely that the initial injury actually wouldn't have been severe enough to have caused him any trouble if he hadn't had the deformity, and in my experience when a person does have a postural deformity, irrespective of what initiates the symptoms, they have to correct that deformity before they can be free of back pain.

"He had been instructed in exercises by Dr. Salvatore and also by Dr. Huffman, but he hadn't found it necessary from his way of thinking to do those exercises.

"Q Doctor, do you at the present time have any reasons to alter your report that you submitted in any way?

"A No, sir, I do not."

■ Where the answer, as in this case, is within the province of medical knowledge, the Commission has the duty of resolving the conflict by considering the evidence. Meeks v. Industrial Commission, 7 Ariz.App. 150, 436 P.2d 928 (1968); Johnson v. Industrial Commission, 107 Ariz. 338, 487 P.2d 759 (1971).

■ We believe petitioner's position, with reference to the strenuous lifting or bending and complaints of pain showing that the industrial injury has added to his preexisting condition which will affect his return to work, is based principally on Dr. Huffman's testimony finding a permanent disability attributable to the accident. This testimony was not accepted by the Commission. Midland-Ross is distinguishable in that it dealt with the loss of earning capacity after a finding of disability. If petitioner should develop difficulties medically established as being related to the industrial accident he can petition to reopen as noted in Spacone v. Industrial Commission, 14 Ariz.App. 351, 483 P.2d 583 (1971):

" . . . When and if the expected future disability occurs, if causally related to his industrial injury, petitioner will have his remedy in a petition to reopen."

The award is reasonably supported by the evidence.

Affirmed.

STEVENS, P. J., and CASE, J., concur.